# Richards v. Daugherty.

*Bill in Equity to abate a Nuisance.*

1. *Nuisance; when bill can be maintained by private citizen for its abatement.*—A nuisance which operates to destroy the health of a family or to seriously diminish the comfortable enjoyment of a dwelling house, is productive of irreparable damage and mischief, for which the law furnishes no adequate remedy; and a person whose health or the comfort of whose house is damaged and affected thereby, may maintain a bill for the purpose of abating such nuisance.

2. *Same; same; mill dam.*—Where the erection of dams or other obstructions which materially affect the natural flow of a running stream, results in the injury to the health of persons living in the neighborhood, or in the vicinity, such dam or obstruction, constitutes a nuisance, and may be abated by bill in equity at the suit of a person, the health of whose family is injured thereby, without waiting the trial of the issue of the nuisance *vel non* by an action at law.

3. *Same; same; same.*—Where a bill is filed to have a mill dam abated as a nuisance, upon the ground that it results in producing ill health in the family of the complainant and in the vicinity contiguous to the dam, the fact that the malaria which caused the ill health complained of was generated in part by other causes than the mill dam, constitutes of itself no defense to the maintenance of the bill, if it is further shown that the existence of the mill dam materially contributed to the condition naturally existing, producing malaria, and intensified or made more poisonous the malaria generated by other causes.

4. *Bill filed to abate mill dam as a nuisance; estoppel.*—Where a
   bill is filed seeking to have abated as a nuisance a mill dam,
   the facts that the complainant at the time of the erection
   of said dam consulted with the defendant and advised him as
   to the manner of its erection and was aware that the de-
   fendant' was expending money in the construction of said
   dam, and the mill which was to be operated by the pond caused
   from the dam, do not work an estoppel upon the complainant
   to maintain such bill, upon the ground that the maintenance
   of such dam produced ill health in the family of the complain-
   ant and of other people in the vicinity; and such facts con-
   stitute no defense to such bill.

APPEAL from the Chancery Court of Henry.

Heard before the Hon. W. L. PARKS.

The bill in this case was filed by the appellee, Alex.
Daugherty against the appellant, Henry Richards, and
prayed to have a mill dam and mill pond abated as a
nuisance. The averments of the bill and the grounds
of demurrer reviewed, and the ruling of the chancellor
upon the demurrer are sufficienly shown in the opin-
ion.

In the respondent's answer to the bill, after setting
out the facts in denial of the mill and dam constituting a
nuisance, there is contained the following paragraphs:
"7. Respondent avers that said mill pond was made
for the purpose of operating a grist mill for the public
by water power, and that the same is largely patronized
by the public; that it has been in active operation for
9 or 10 years in its present capacity and condition, and
on the site now occupied by the same; that when it
was in process of construction complainant was pres-
ent and knew of its erection, and made no objection
thereto; that he advised with respondent about the
plans of construction and erection of the dam and ope-
ration of the mill and counselled and suffered large ex-
penditures to be made in the improvement of the said
mill and dam, without protest or objection, and is now
estopped to deny the right of this respondent to con-
tinue the existence and operation of said water mill
and the maintenance of the mill pond connected there-
with." "8. That respondent's mill pond is fed exclu-
sively by a spring or springs of natural lime water

flowing from the side of the hill about 80 yards from the dam constructed by him; that the waters from the spring empty into the pond within ten feet of the boil; that the mill pond is composed of three small ponds covering collectively about one and one-half acres, and that the entire mill pond and stream above the pond and springs are all on this respondent's lands, and at no point either above or below the dam, are any of complainant's riparian rights affected; that the banks of said pond are nearly precipitate, and that at no time does the amount of water in the pond vary more than one and one-half feet in depth; that the mill is operated every day in the consumption of the water, that a day's grinding lowers the water to the extent above set out, and that at night when the mill is shut down that the water from the spring raises the pond to its normal height, so that the amount of the water varies with the day and night and not with the wet and dry seasons of the year; that the pond is free from green and growing vegetation; and that the water in said pond is never so lowered that any appreciable portion of the bottom and whatever of decaying vegetation there might have accumulated, is exposed to the sun."

The complainant filed separate exceptions to each of the paragraphs numbered 7 and 8 upon the grounds: 1st. That said paragraphs constituted an insufficient answer to the bill. 2d. Because said paragraphs did not deny the allegations which gave complainants' bill equity, neither do they set forth any facts to avoid the legal effect of the allegations of said bill.

The respondent moved the court to strike the complainant's exceptions to paragraphs 7 and 8 of respondents' answer.

Upon the submission of the cause on the motion of the respondent to strike plaintiff's exceptions to paragraphs 7 and 8, the court overruled said motions and ordered that the plaintiff's said exceptions should be sustained. The other facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

On the final submission of the cause on the pleadings and proof, the chancellor decreed that the com-

plainants were entitled to the relief prayed for, and ordered accordingly.

The defendant appeals and assigns as error the several decrees rendered by the chancellor.

R. D. CRAWFORD, for appellant, cited 14 Ency. Pl. & Pr. 1137; *Ogletree v. McQuagg*, 67 Ala. 580.

ESPY, FARMER & ESPY, *contra.*—There was no error in overruling appellant's demurrer to appellee's original bill. See *Hundley v. Harrison*, 123 Ala. 292; *Ogletree v. McQuaggs*, 67 Ala. 580.

The decree of the chancellor overruling appellant's motion to strike appellee's exceptions to his answer and sustaining appellee's exceptions to his answer and the final decree rendered in the cause are free from error. See *Hundley v. Harrison, supra; Ogletree v. McQuaggs, supra; The State v. Rankin*, 16 Am. Rep. 737; *Neal v. Henry*, 33 Am. Dec. 125; *Frost v. Berkley Phos. Co.*, 46 Am. St. Rep. 736.

TYSON, J.—The bill in this cause seeks to have abated an alleged nuisance. It is shown by its averments that the respondent by the erection of a dam, for a grist mill, across flowing streams formed the mill ponds sought to have removed. On the borders or shores of these ponds there is a growth of trees that produce annually a heavy foliage, consisting of leaves and moss, which when killed by the winter's cold, fall into the ponds; also there are a large number of logs, stumps, and trees in these ponds which are continuously undergoing a state of decomposition. During the rainy seasons the respondent by means of the dam collects a large body of water which covers up this decaying vegetable matter, and while in this condition a thick slimy scum accumulates upon the surface of the water in these ponds. During the dry seasons the respondent in operating his mill uses a large amount of water from the ponds, thus reducing their area. By thus turning the water off and on, the decaying vegetable matter in the ponds is exposed to the rays of the sun, which, it is averred, produces malaria. The malaria thus generated

causes diseases in the neighborhood and vicinity contiguous to the ponds, and especially in the family of the complainant, who resides upon his own lands within a short distance of them, and whose residence was where it now is, before the ponds were constructed. Before the construction of this dam the health of the community and especially that of complainant and his family was good, but since its erection there has been a great deal of sickness in the neighborhood and also in the family of complainant, caused by malaria produced by the ponds.

It is averred that the mill and dam were erected, without an order of the probate court of the county in which they are situate.

A demurrer assigning several grounds was interposed to the bill, which was overruled. Only two of these grounds are insisted upon: 1st, that the nuisance sought to be abated is public in its nature, and that complainant fails to show any special injury to himself; and, 2d, the bill seeks to have the court determine the question of nuisance *vel non*—an issue which should be submitted to the jury. Both of these insistences are decided adversely to the appellant in the case of *Ogletree v. McQuaggs*, 67 Ala. 580. It is there said: "When the nuisance operates to destroy health, or to diminish seriously the comfortable' enjoyment of a dwelling house, it is in its nature and consequences productive of irreparable mischief for which the law can furnish no adequate remedy. * * * The erection of dams or other obstructions, in such manner as to affect materially the natural flow of the water to the manifest injury of the lands of other riparian proprietors, or to injure materially the health of those residing in the vicinity, the court has enjoined without awaiting the trial of an issue at law, or until there was a trial of the issue. * * * Every man has a right to the undisturbed enjoyment of his property, especially to dwell in his homestead freed from the peril of disease and death, caused by artificial constructions erected by his neighbor on his own lands, whatever may be the purpose of such constructions. The right is imbedded in the common law maxim of such frequent use—*sic utere tuo ut alienum non laedas.*"

The deleterious consequences, stated in the bill, alleged to have resulted in consequence of the erection of the dam certainly make these ponds a public nuisance. But they are also, as to the complainant, a private nuisance—of special injury to him, since they materially affect the comfortable enjoyment of his home and are a constant and continuing menace to the health of himself and family. The fact that the malaria produced by these ponds also affects the health of others who reside in the vicinity of them, does not lessen the injury done to complainant, nor merge it in that of which the public may complain.—*Ogletree v. McQuaggs, supra.* See also *Grady v. Wolsner,* 46 Ala. 381; *Hundley v. Harrison,* 123 Ala. 292, and cited therein and quoted from, *Neal v. Henry,* 33 Am. Dec. 125.

The demurrer was properly overruled.

While respondent made a motion to strike the exceptions filed by complainant to paragraphs 7 and 8 of his answer, the point is not made that under the rule (34 of Chancery Practice, p. 1209 of Code), it is not such an answer to which an exception could be taken for insufficiency. By written agreement of the attorneys of record, the exceptions to these paragraphs were submitted to the chancellor for decision, instead of to the register as required by the rules of practice in a proper case.—Rules 35-38 of Chancery Practice, p. 1209 of Code. Treating this matter as the attorneys have treated it, the single question presented is, whether the matters and things set up in these paragraphs are a defense to the bill. A mere cursory examination of them will show that they are not. While an estoppel in round terms is alleged, the facts constituting it, if it be conceded that such a defense could under any circumstances be invoked to a bill of this nature and character, are clearly not sufficiently stated or averred.

There can be little doubt, under the evidence, that the ponds sought to be removed produced malaria, and caused disease in the community of people who reside near them, and that the complainant's family have suffered in consequence of having contracted malarial troubles. It is insisted by respondent that the malaria which caused the members of the family of the com-

plainant to have had chills and fevers, was in part, if not entirely, generated by other natural ponds in that vicinity and the decay of pine trees, boxed for producing turpentine. Conceding for the purpose of this discussion that respondent has shown that the ill health of the community was in part the result of other causes than the malaria arising from these ponds, this does not relieve him of the duty imposed upon him by law of using his own land in such manner as not to injure his neighbor. And if these ponds materially contribute to the condition naturally existing productive of malarial diseases and intensify or make more poisonous the malaria generated by the other causes, the respondent has no right to maintain them.—*Frost v. Berkeley Phos. Co.,* 46 Am. St. Rep. 736. That they do, is admitted by the respondent in his own testimony.

We are clear to the opinion, upon the whole evidence, that the complainant is entitled to the relief sought by his bill.

Affirmed.

