# Romano, *et al. v.* B'ham Ry. L. & P. Co.

*Bill to Enjoin and to Abate Nuisance.*

(Decided June 5, 1913. Rehearing denied June 30, 1913.
62 South. 677.)

1. *Property; Light and Air.*—The ownership of lands extend "us que ad coelum" and the owners as an incident of ownership are entitled to the flow of pure air within such limits.

2. *Evidence; Judicial Notice; Manufacturing Process.*—Courts cannot take judicial notice as a matter of common knowledge that the escape of artificial gas stored in a reservoir could be remedied by calking the seams of the reservoir or tightening its rivets at the point of escape, for the purpose of denying an injunction to restrain the maintenance of the reservoir on the ground that the escape of the gas was not a permanent nuisance.

3. *Same; Nuisance; Future Injuries to Land.*—Chancery interposes by injunction to prevent future injury with the respect to a legal right attaching to lands, merely on the ground of the damage it will cause the land, such as the right to have the air above it kept pure, etc.

4. *Same; What Constitutes.*—While gas works are not nuisances per se they become actionable nuisances whenever they injuriously affect the enjoyment and use of property in their vicinity.

5. *Same; Injunction.*—If the maintenance of a gas reservoir is a nuisance because gas is permitted to escape, and it will necessarily continue to be such nuisance because the leakage cannot be stopped, its maintenance should be enjoined.

6. *Same; Practice.*—Even though a leaking gas reservoir may be repaired so as to prevent damage to property, its maintenance should be enjoined if it in fact injures the property, unless defendant offered at once to repair it, and a bill for injunction should be retained until it can be ascertained whether the nuisance can be abated.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. LATADY, Special Chancellor.

Bill by Joe Romano and others, against the Birmingham Railway, Light & Power Company, to enjoin the maintenance of a gas reservoir, and to abate it as a nuisance. From a decree dismissing the bill complainants appeal. Reversed and remanded.

JAMES A. MITCHELL, and SAMUEL B. STERN, for appellant. The minor sister was not a necessary party.— 16 Cyc. 184. While gas works are not a nuisance per se, they may become a nuisance when erected and operated in a residential portion of a city, and permitted to leak and emit the well-known objectionable gas odor. —*Grady v. Worsner*, 46 Ala. 381; *English v. Motor Co.*, 95 Ala. 264; *Rouse v. Martin*, 75 Ala. 515; *Hundley v. Harrison*, 123 Ala. 292; 20 Cyc. 1180; 75 Am. St. Rep. 173; 71 Am. Dec. 49. The allegations of the bill excluded the theory that complainants had a clear, legal right, and brings the case directly within the principles announced in *Ninninger v. Norwood*, 72 Ala. 277; *Hooper v. Dora M. Co.*, 95 Ala. 235.

[Romano, et al. v. B'ham Ry. L. & P. Co.]

TILLMAN, BRADLEY & MORROW, M. M. BALDWIN, and J. A. SIMPSON, for appellee. The suit is by private parties and not by the public, and must show particular or peculiar inconvenience to them different from that suffered by the public generally before it can be said that they are entitled to relief. Construing the bill most strongly against them as is required, (*Rapier v. Gulf City P. Co.,* 64 Ala. 330) it must be conceded that the property is unoccupied. It appears, therefore, that the allegation that it is deleterious to persons residing thereon is nothing more than a mere conclusion of what might happen if it were occupied.—*Rouse v. Martin,* 75 Ala. 510. Its allegations then present a purely pecuniary loss, and the averments of the bill were not sufficient to give it equity.—*Baker v. Selma S. & S. Ry. Co.,* 135 Ala. 552; 16 Ves. 338; 3 Stockton 204; *English v. P. E. L. & M. Co.,* 95 Ala. 259; *Ray v. Lyon,* 10 Ala. 63, and authorities supra; *Richards v. Dougherty,* 133 Ala. 569. Where the court knows the evil can be prevented, an injunction will not be granted.—Authorities supra; 28 Am. Rep. 378 and authorities there cited. The law requires that a case of strong and pressing necessity be presented before the powers of a court of equity can be invoked to stop the wheels of commerce by injunctive process, and the court will test the bill for this requisite on demurrer as well as for any other requisite.—*T. C. I. & R. R. Co. v. Hamilton,* 100 Ala. 252, and authorities supra. Furnishing gas is a lawful business, and the maintenance of a necessary gas tank is not a nuisance per se.—*Kingsbury v. Flowers,* 65 Ala. 479; 118 N. W. 786.

SAYRE, J.—Appellants filed this bill for an injunction to abate a nuisance. The averment is that appellants own four adjacent lots at the corner of Pratt

boulevard and Twentieth street in the residence section of that part of the city of Birmingham, formerly known as Ensley. The lots are vacant, but are being held for sale or future use as places of residence. Within a year, and since complainants acquired their property, defendant has constructed on a lot immediately across the street from appellants' property a large gas holder or reservoir in which illuminating or fuel gas is kept for distribution to its customers in the neighborhood. It is averred that "said gas reservoir or gas holder is continuously emitting fumes and gases polluting the air in that vicinity with unpleasant and unwholesome odors which are deleterious to the health and comfort of persons living and residing in that vicinity and particularly to persons who might reside on the real estate of complainants." To show their own injury, appellants aver that the sale of their property for any reasonable price has been and is now being prevented, the value thereof as a place of residence is "absolutely ruined, and its value is greatly depreciated."

From the chancellor's opinion, written in explanation of the grounds upon which his decree proceeded, it is to be observed that two concurring considerations operated to bring about his conclusion against the equity of the bill. Other objections were taken to the bill, but they have not appeared to us to contain merit, and, inasmuch as we have been unaided by a brief for appellee, we have assumed that it is willing to rest its case upon the grounds which were sustained in the court below, and shall confine the statement of our views to those points.

1. It did not appear to the chancellor that the structure in question, or defendant's use of it, constituted a menace to the future use of complainants' lots as vacant property. There has been no physical invasion

of that part of the solid earth over which complainants have acquired exclusive ownership and dominion; but their ownership extends usque ad cœlum, and within the limits of that ownership they are entitled to the flow of pure air. The right is incident to the ownership of land, and must be protected as well as any other valuable right. "No man has a right to interfere with the supply of pure air that flows over another's land any more than he has to interfere with the soil itself."— *Cavile v. Kilner,* 26 L. T. (N. S.) 277; Wood on Nuisances (2d Ed.) § 544. It is not denied, therefore, that any sensible pollution of the air which flows over complainants' property, to a degree in excess of such pollution as is fairly incident to the ordinary use of land in that neighborhood, would constitute an actionable injury; but the proposition of the decree is that complainants shall have no relief in equity by way of injunction, but should be remitted to their action at law for damages, because the property is vacant and complainants' comfortable enjoyment thereof has not been invaded or diminished. Of course, it does not follow that, because complainants might have an action at law, they cannot resort to equity. The remedy at law must be adequate to redress the particular injury complained of. An owner is entitled to be secured in the full beneficial use of his property and his complete dominion over it so long as his use and dominion does not invade the corresponding legal rights of his neighbors. The Code of 1907 has defined a private nuisance as one which may injure either the person or property of another. —Section 5198. In adjusting rights and remedies between parties in respect of the uses to which real property may be devoted, regard must be had for the future. It is to secure the future that equity intervenes. Complainants and defendant alike, when they acquired prop-

erty in a neighborhood set apart to residential purposes, took it with certain implied restrictions on their use of it. Complainants are also entitled to be secured in the peculiar present and future advantages of the. neighborhood. This was clearly recognized by this court in the case of *Sloss-Sheffield Co. v. Johnson,* 147 Ala. 384, 41 South. 907, 8 L. R. A. (N. S.) 226, 119 Am. St. Rep. 89, 11 Ann. Cas. 285. Complainants ought not to be required to submit to a use of defendant's property, a use hurtful to complainants and others, though valuable to defendant, which a court of equity would deny to complainants in respect to their own property on the application of other neighbors. A court of equity interposes by injunction to prevent future injury in respect of a legal right attaching to land simply on the ground of the damage it will produce to the land and its ownership, and in a case like this it is of no consequence whether complainants reside on their property or not.—*Wilson v. Townsend,* 1 Drew. & Sm. 324; *Peck v. Elder,* 3 Sandf. (N. Y.) 126.

2. Assuming as a matter of common knowledge to know in a general way, at least, the processes involved in the manufacture, storage, and distribution of artificial gas because those processes are very old, the chancellor, in the absence of averments that gas was manufactured on defendant's named premises and that its escape resulted from an irremediable defect in defendant's holder or reservoir, assumed to know that the trouble of which the bill complained could be remedied by calking the seams of the reservoir, or by tightening its rivets at the point of escape, and that there was nothing inherent in the structure and use of such reservoirs to render the escape of gas irremediable as might be the case if gas were manufactured on the premises.

We do not feel that confidence in the completeness of our knowledge of such things which would justify our denial of complainants' right to relief on this ground taken by the chancellor. While it is held that gas works, places where gas is manufactured, are not nuisances per se, they are placed in the class of erections which are not within the ordinary purposes to which real estate is applied, and, although operated under statutory authorization, are to be regarded as actionable nuisances whenever they injuriously affect the use and enjoyment of property in the vicinity.—20 Cyc. 1180. For aught we know, gas holders or reservoirs, constructed for the storage and distribution of gas at points remote from the place of manufacture, may be assigned to the same class. Nor do we feel safe in assuming to know whether the injury stated in the bill results from remediable negligence in the construction, maintenance, or operation of defendant's gas holder, or whether the consequences complained of are so unavoidably incident to constructions of the sort as to render them nuisances in neighborhoods which have been set apart and occupied as places of residence. The injury here may be temporary, or it may be permanent. That question should be determined upon the evidence to be heard, and the decree granting relief, if relief shall finally appear to be proper, may be accommodated to the fact. If the structure is a nuisance, and will necessarily continue to be a nuisance, and is incapable of remedy by alteration, repair, or change of process, which would effectually correct the evil of its presence, it ought not to be allowed in the neighborhood where it has been set up. A like result would follow upon proof that the emission of noxious gas and odor has injuriously affected the value of complainants' property for residential purposes and will continue to do so, even though it may be correctable in

the manner suggested by the chancellor, unless the defendants should evince a willingness and ask for an opportunity to apply that remedy. The proper practice in that event would be to retain the bill until that relief can be tested and the result ascertained.—Wood on Nuisances, § 823.

Our conclusion is that the bill is not open to the objections sustained to it in the chancery court. On the facts stated in the bill complainants are entitled to relief. The decree will be reversed.

Reversed and remanded.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.

ON REHEARING.

SAYRE, J.—Counsel for appellee must be acquitted of any neglect in the manner of furnishing a brief. It now appears that a brief was furnished, but that it was mislaid by the clerical department of the court. Upon consideration of the application for rehearing in connection with the original brief now before us, we are of opinion that they furnish no sufficient reason for disturbing the conclusion heretofore reached. The application is denied.