(124 So. 82)

**MARTIN BLDG. CO. v. IMPERIAL LAUNDRY CO. (6 Div. 379.)**

Supreme Court of Alabama. June 27, 1929.

Rehearing Stricken Oct. 17, 1929.

Nesbit & Sadler, of Birmingham, for appellant.

Harsh & Harsh, of Birmingham, for appellee.

GARDNER, J. The complainant to this bill owns a 12-story office building in the city of Birmingham, known as the Martin Building, located on the northwest corner of Fourth avenue and Twenty-Third street. To the east of this building and within about 100 feet thereof, respondent operates a laundry with a steam boiler using soft coal as a fuel, and from the smokestack there is emitted considerable amount of smoke and soot which complainant insists finds its way into a large number of its offices, thus endangering the health and comfort of its tenants, causing a loss of some of the tenants and a threatened loss of others. Complainant, after requesting of respondent, without avail, an abatement of this condition, filed the present bill seeking injunctive relief to this end. Upon consideration of the cause for final decree on pleadings and proof, the chancellor denied relief and dismissed the bill, from which decree complainant prosecutes this appeal.

A discussion of the evidence would serve no useful purpose. Suffice it to say the testimony has been read and studied with much care. While there is some evidence tending to the contrary, yet we are of the opinion that the decided weight of the testimony establishes the averments of the bill to the effect that a large quantity of smoke finds its way into complainant's offices directly from respondent's smokestack, which, it seems, is the height of complainant's eighth story. The boiler is fired with from four to six shovels of soft coal every 20 or 30 minutes, respondent using 2 or 3 tons of coal each day, or an average of about 80 tons a month. Each time it is so fired black smoke is emitted from the stack lasting from 30 to 45 seconds. When the wind is from the east this smoke is blown directly into the offices facing in that direction. One of complainant's witnesses testified: "I have seen a continuous stream of smoke from the stack of the Imperial Laundry to my window. I have seen it so thick you would hardly see the stack from the window. * * * It has happened three or four times a day if it was blowing in the right direction." Others testified to like effect, and it is without dispute that complainant has lost one tenant (Montevallo Coal Company) occupying several of the offices, on account of this smoke, and others threaten to leave for like reason.

While smoke is not classified as a nuisance per se, yet it may constitute a nuisance so imperiling the comfort or health of those on the premises invaded by it as to call for injunctive relief at the hands of a court of equity. 46 Corpus Juris, 688; Rouse & Smith v. Martin, etc., 75 Ala. 510, 51 Am. Rep. 463; English v. Progress Elec. Co., 95 Ala. 259, 10 So. 134; Harris v. Randolph Lumber Co., 175 Ala. 148, 57 So. 453; Hundley v. Harrison, 123 Ala. 292, 26 So. 294; Romano v. B'ham Ry., Light & Power Co., 182 Ala. 335, 62 So. 677, 46 L. R. A. (N. S.) 642, Ann. Cas. 1915D, 776; Holman v. Athens Empire Laundry, 149 Ga. 345, 100 S. E. 207, 6 A. L. R.

1564; Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567; McCarty v. Natural Carbonic Gas. Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465, 12 Ann. Cas. 840; 1 Wood on Nuisance, § 505.

Our statutes (Code 1923) defining nuisances, merely declaratory of the common law (First Ave. Coal & Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598, 32 L. R. A. [N. S.] 522), read as follows:

9271. "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."

9274. "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."

In Dixie Ice Cream Co. v. Blackwell, 217 Ala. 330, 116 So. 348, 58 A. L. R. 1223, speaking to the question here presented, the court said: "In general, home owners and occupants, as well as all others must endure, without legal recourse, all of those petty annoyances and discomforts ordinarily and necessarily incident to the conduct of those trades and businesses which are usually a part of municipal life, and, which are more or less essential to the existence and comfort and progress of the people. * * * But there are limits to this rule, and, as said in the well-considered case of Hundley v. Harrison, 123 Ala. 298, 26 So. 295: 'Any establishment erected on the premises of the owner, though for the purpose of trade or business, lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held, that smoke, offensive odors, noise or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance.'"

And it was further stated in the opinion that conditions there considered as to cinders, soot, and smoke would constitute actionable nuisance even in a business district.

In this jurisdiction we recognize, in cases seeking injunctive relief, the "comparative injury doctrine," not universally accepted. Brede v. Minnesota, etc., Stone Co., 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092. As said by this court in Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192: "But it is not every case of nuisance, or continuing trespass, which a court of equity will restrain by injunction. In determining this question, the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction."

That a public utility was involved was considered by the court in English v. Progress Elec. Co., supra, and in Nevins v. McGavock, 214 Ala. 93, 106 So. 597, the denial of the writ was rested largely upon the question of public convenience or necessity. It is well established also by our authorities that negligence ordinarily is not an element of an actionable nuisance. Harris v. Randolph Lumber Co., supra; Shelby Iron Co. v. Greenlea, 184 Ala. 496, 63 So. 470; Town of Vernon v. Wedgeworth, 148 Ala. 490, 42 So. 749.

The right of complainant as owner and landlord to maintain a bill of this character is well established. East v. Saks, 214 Ala. 58, 106 So. 185. No specific rules for determination of questions of this character are attempted to be established, only general principles declared, and each case determined upon its own facts in the light of these principles. Dixie Ice Cream Co. v. Blackwell, supra; Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016.

The Court of Appeals of New York, in Natural Carbonic Gas Co.'s Case, supra, 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465, 12 Ann. Cas. 840, considering a similar question, used the following language which meets with our approval and is in accord with the previous decisions of this court:

"The law relating to private nuisances is a law of degree, and usually turns on the question of fact whether the use is reasonable or not under all the circumstances. No hard and fast rule controls the subject, for a use that is reasonable under one set of facts would be unreasonable under another. Whether the uses of property to carry on a lawful business, which creates smoke or noxious gases in excessive quantities, amounts to a nuisance, depends on the facts of each particular case. 21 Am. & Eng. Enc. Law, 2d ed. p. 692. Location, priority of occupation, and the fact that the injury is only occasional, are not conclusive, but are to be considered in connection with all the evidence, and the inference drawn from all the facts proved whether the controlling fact exists that the use is unreasonable. If that fact is found, a nuisance is established, and the plaintiff is entitled to re-

lief in some form. Unless that fact is found, or it is an inference of law from other facts found, no nuisance is established, even if the plaintiff shows that he has suffered some damage, annoyance, and injury. Those evils are at times incidental to civilized life, and the sufferer finds compensation in the arts and agencies of civilized society. * * *

"The leading authorities in all jurisdictions hold that the question is whether the defendant makes a reasonable, or, as some judges express themselves, a proper, use of his own property. * * * Trifling results are disregarded, for the courts proceed with great caution, and will not interfere with the use of property by the owner thereof, unless such use is unreasonable, the injury material and actual, not fanciful or sentimental. * * *

"The defendant's business is lawful, and not a nuisance per se, although it has been found that, as carried on, it is a nuisance in fact. The extent, more than the nature, of the injury, the quantum, rather than the damnum constitutes the nuisance. Some smoke is generally created by the natural and ordinary use of land near a village or city, and, while this may sometimes be annoying to neighbors, it is part of the price paid for living where there are neighbors. But, when the smoke is so unusual and excessive as to materially interfere with the ordinary comfort of human existence, the trier of the facts, taking into account all the circumstances, such as public utility, locality, immediate surroundings, and the like, may find the use unreasonable."

██ Some of the evidence offered by respondent was to the effect that smoke was emitted from other stacks in that general neighborhood, including complainant's. But this constituted no defense (Richards v. Daugherty, 133 Ala. 569, 31 So. 934; 46 Corpus Juris, 671), for complainant's evidence established very clearly and satisfactorily that the smoke here complained of came directly from respondent's stack. Nor is it a defense, though a matter properly to be considered, that the laundry was established and operated several years before the construction of the office building. "Priority of occupation may be considered, but it is not conclusive." 46 Corpus Juris, 670; Shelby Iron Co. v. Greenlea, 184 Ala. 496, 63 So. 470; Town of Vernon v. Wedgeworth, supra; Lamb v. Roberts, 196 Ala. 679, 72 So. 309, L. R. A. 1916F, 1018; Loftin v. McLemore, 1 Stew. 133; Bartel v. Ridgefield L. Co., 131 Wash. 183, 229 P. 306, 37 A. L. R. 683; 1 Wood on Nuisance, § 520.

██ Upon consideration of the proof, we are persuaded complainant suffers a very material and substantial continuing injury from respondent's unreasonable use of its property in emitting black smoke which finds its way into complainant's building, and to such ex-

tent as to constitute a private nuisance. But the court would not destroy or unnecessarily hamper respondent's business which is both lawful and useful. We are not convinced there exists no middle ground upon which a just and equitable decision may not be planted, whereby complainant may be largely, if not entirely, relieved, and respondent continue its operations. It is the rule of the courts that the remedy awarded "reaches no further than the necessity of the case demands." Radney v. Town of Ashland, 199 Ala. 635, 75 So. 25, L. R. A. 1917E, 366; Brede v. Minnesota, etc., Stone, Co., supra.

Respondent made effort to show that it had attempted to remedy the trouble but without success. Witnesses for complainant stated that the use of coke was practicable and would eliminate the smoke. Respondent used coke, but insists the experiment was unsatisfactory. It developed, however, that the experiment was without the use of a blower, which was considered necessary. See Holman v. Athens Empire Laundry Co., supra, a case here very much in point.

But still another remedy is suggested in evidence, which has not been tried. We have reference to the use of stokers. Respondent's secretary testified he had no experience with a stoker and did not "know whether that would eliminate it or not," but that one is now in use by the Perfection Laundry. The testimony of respondent's president indicates he would not try the stoker for the reason the sellers would not guarantee there would not be any smoke at all, and without such written guaranty he would not consider it. But the question is not so much an eliminating of all smoke, but of reducing the smoke to a minimum so as to work no injury to complainant, and the fact of its use by another laundry is some indication of its practicability for that purpose. In the recent case of Browning v. Wesco Co., 218 Ala. 544, 119 So. 660, reference is made to the fact that the respondent in that case had ordered a stoker to eliminate the trouble caused by the smoke.

██ We are persuaded, therefore, that the question of abatement of the nuisance by improved methods should be by the court given further consideration, to the end that complainant may have relief without material interference with respondent's lawful business. Romano v. B'ham Ry., Light & Power Co., 182 Ala. 335, 62 So. 677, 46 L. R. A. (N. S.) 642, Ann. Cas. 1915D, 776. As said in 1 Wood on Nuisances, § 823: "Injunctive orders should be carefully drawn, and in no case should they restrain the defendant from doing more than is necessary to stop the nuisance." In English v. Progress Elec. Co., supra, this court approved the suggestion that in some cases it is well to direct a reference to ascertain if the evil complained of may be remedied by approved appliances or scientific alterations and that the register report there-

on. We again approve this method as most advantageous. The order of reference to the register should provide a wide range of investigation as to any practical method for remedying the evil complained of, as it should not be confined merely to those herein discussed.

It results as our conclusion that the decree dismissing the bill is error. It is therefore reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

### On Rehearing.

GARDNER, J. Upon original consideration of this cause, this court was not favored with brief for appellee. Upon application for rehearing, appellee cites section 9277, Code of 1923, as having material bearing in support of the decree of the court below. There was no intimation in the record, including the learned chancellor's opinion or in brief for appellant, concerning any application of this Code section, and this we offer as some excuse (though admittedly insufficient) for the fact that this statutory provision (a codification of the Act of 1915, p. 744) escaped our notice. The exigencies of this case do not require a determination of the full force and effect of this statute. We are persuaded, however, that its provisions are not inconsistent with the conclusion reached in the instant case. It is therein expressly provided that the statute shall "not apply whenever a nuisance results from the negligent or improper operation of any such plant, establishment or any of its appurtenances." That a smoke nuisance to complainant has been established by the evidence we think is quite clear.

As indicated in the original opinion, a study of this record is rather persuasive that this nuisance and harmful damage to complainant may be abated at reasonable cost and effort on respondent's part, and for the ascertainment of the most feasible and practical method to that end, a reference to the register was suggested. We are of the opinion that under the above-quoted proviso of the statute, the continuance of the nuisance which could, by reason of modern methods or inventions and at reasonable cost, be abated, would properly be classed as "a negligent or improper operation of any such plant," and therefore without the protective feature of the statute. Such is the effect of the holding in the instant case, and the ruling is therefore not out of harmony with the statute.

Under rule 38 of this court, appellee having filed no brief upon original consideration is without right to make application for rehearing. As the statute to which our attention is now directed was overlooked, and in view of the further progress of the cause, we have deemed it proper to express our views thereon. But the application for rehearing must be stricken, in view of the cited rule, and in accordance with appellant's motion to that end.

Application stricken.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.