20 So.2d 329

NATIONAL SOUTHERN PRODUCTS CORPORATION, Inc., v. CITY OF TUSCALOOSA.

6 Div. 274.

Supreme Court of Alabama.

Dec. 21, 1944.

Rehearing Denied Jan. 18, 1945.

S. H. Sproot and Reuben H. Wright, both of Tuscaloosa, for appellee.

Foster, Rice, Madison & Rosenfeld, of Tuscaloosa, for appellant.

GARDNER, Chief Justice.

The City of Tuscaloosa, a municipal corporation of approximately 30,000 population, filed the bill in this case against the National Southern Products Corporation, Inc., and a number of named individuals, seeking the abatement of an alleged public nuisance arising from the operation of a manufacturing establishment for certain chemical compounds or oils, begun in April, 1943, upon property situated at the intersection of 12th Street and 14th Avenue in

318

said city. The demurrer interposed by the defendants to the bill was overruled, and from this decree the defendant, the National Southern Products Corporation, Inc., alone prosecutes this appeal.

The bill contains many details of facts concerning the alleged nuisance and the widespread area injuriously affected thereby, which we may here abbreviate as follows: The defendants are operating a chemical plant in a residential area in the City of Tuscaloosa in a location which is described as a densely settled residential area, and so established long before the operation of such plant. There are emitted from the plant fumes, gases, deleterious and unwholesome substances into the public streets, the public schools, and many residences, within a radius of one mile from said plant, all of which injuriously affect the health, comfort, and well-being of a substantial portion of the citizens resorting to the use of the streets, schools, and residences within said radius of one mile.

We are of the opinion that perhaps, in large part at least, the case is covered by statutory provisions. Illustrative is § 1081, Title 7, Code 1940, defining nuisances, as follows: "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."

And the definition of a public and private nuisance is found in § 1084, Title 7, Code 1940, as follows: "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."

And § 1085, Title 7, Code 1940, reads: "All municipalities in the State of Alabama may maintain a bill in equity in the name of the city to abate or enjoin any public nuisance injurious to the health, morals, comfort or welfare of the community, or any portion thereof."

As if to reinforce the right of the city to maintain a bill of this character, express authority is again rested with municipal corporations to abate public nuisances in §§ 505 and 506, Title 37, Code 1940.

That the averments of the bill establish a public nuisance within the definition of § 1084, supra, is too clear for further discussion. We had occasion to refer to some of these statutes in Martin Bldg. Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82, where the abatement of a nuisance caused by smoke emitting from the furnace stacks of a laundry was involved. We recognized in that case, as indeed does the statute itself, that the inconvenience complained of must not be fanciful or such as would only affect one of fastidious taste. It should be such as would affect an ordinary, reasonable person. We recognized, also, as does likewise the statute, that, the fact that the business being operated is within itself lawful is no cause for denying relief seeking abatement of a nuisance.

In the more recent case of Beam v. Birmingham Slag Co., 243 Ala. 313, 10 So.2d 162, Section 1088, Title 7, Code of 1940, was considered, but that section is without influence here and needs no comment. We cite this latter case for the reason that a number of our authorities treating this matter of abatement of nuisances are there collated.

In Romano v. Birmingham Railway, Light & Power Co., 182 Ala. 335, 62 So. 677, 678, 46 L.R.A.,N.S., 642, Ann.Cas.1915D, 776, it was noted that the business there complained of was established in a neighborhood set apart for residential purposes, and the observation was made that the defendants "took it with certain implied restrictions on their use of it."

In Martin Bldg. Co. v. Imperial Laundry Co., supra, it was observed that injunctive orders should be carefully drawn, and in no case should they restrain the defendant from doing more than is necessary to put a stop to the nuisance. The abatement of the nuisance is the object of the bill, and if that can be accomplished without material interference with the operation of defendant's business, that course should be pursued.

Like thought was expressed in Romano v. Birmingham Railway, Light & Power Co., supra. There the Court observed: "The

injury here may be temporary, or it may be permanent. * * * If the structure is a nuisance, and will necessarily continue to be a nuisance, and is incapable of remedy by alteration, repair, or change of process, which would effectually correct the evil of its presence, it ought not to be allowed in the neighborhood where it has been set up. A like result would follow upon proof that the emission of noxious gas and odor has injuriously affected the value of complainants' property for residential purposes and will continue to do so, even though it may be correctable in the manner suggested by the chancellor, unless the defendant should evince a willingness and ask for an opportunity to apply that remedy. The proper practice in that event would be to retain the bill until that relief can be tested and the result ascertained."

██ But all of this in no manner affects the equity of the bill. For the burden rests upon the defendant to bring such matter forward if any such offer or suggestion is at all practicable in the instant case.

In the City of Selma v. Jones, 202 Ala. 82, 79 So. 476, L.R.A.1918F, 1020, is the holding to the effect that a municipal corporation itself has no right to either license or maintain a nuisance.

We have examined with care the authorities noted by counsel for defendants; among them: City of Prichard v. Alabama Power Co., 234 Ala. 339, 175 So. 294; Alabama Power Co. v. Stringfellow, 228 Ala. 422, 153 So. 629; McCalla v. L. & N. R. Co., 163 Ala. 107, 50 So. 971; Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 77 So. 574, but we find nothing in them out of harmony with the conclusions above reached. They clearly call for no separate treatment here.

██ There is suggestion in argument that we are at war, and that the bill should negative the fact that the chemical compounds manufactured are not essential to the war effort. We have given consideration to the war powers of the Federal Government in recent decisions. Brock v. City of Anniston, 244 Ala. 544, 14 So.2d 519; Kittrell v. Hatter, 243 Ala. 472, 10 So.2d 827. There is nothing in this bill (the only matter here for consideration) containing the slightest indication that any of the principles announced in these authorities could find application here.

But, in any event, if there be any such question, it would be purely defensive mat-

ter. It is well settled that the rules of good pleading do not require that complainant anticipate all possible defenses and undertake to negative or confess and avoid them. Such was the holding of this Court in Taylor v. White, 237 Ala. 630, 188 So. 232, and is the rule generally obtaining, as noted in 30 C.J.S. Equity, § 212, p. 668.

It results that the decree of the lower court is correct, and due to be affirmed. It is so ordered.

Affirmed.

THOMAS, FOSTER, and STAKELY, JJ., concur.